NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ELEANOR S. GELTMAN, PETITIONER, v. RELIABLE LINEN SUPPLY CO., RESPONDENT.

Decided May 7, 1940.

For the petitioner, *David Roskein*.

For the respondent, *Clarence B. Tippett*.

A petition to recover compensation for the death of one Isidore E. Geltman, by accident arising out of and in the course of his employment with the Reliable Linen Supply Co., was filed by Eleanor S. Geltman, his widow and dependent, * * *.

The primary question for determination is whether the deceased met with an accident arising out of and in the course of his employment, as contemplated by the provisions of the Workmen's Compensation act and the adjudications thereunder. Of the latter, one of the foremost is *Bryant* v. *Fissell*, 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, wherein the statute is interpreted as follows:

"It remains to be considered whether the accident arose both 'out of and in the course of his employment.' For an accident to arise out of and in the course of employment it must result from a risk reasonably incidental to the employment * * *. A risk may be incidental to the employment when it's either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment."

Tested by the rule above enunciated, there is presented in this case, ample testimony to warrant the conclusion that the accident which caused the death of the employe was the result of a risk reasonably incidental to his employment. The decedent had been employed as a salesman and it is evident that his use of a car was essential for the performance of his specific duties which, among other things, required his visiting various customers of the respondent and soliciting orders from them, in Essex and Passaic counties, and was contemplated by the parties. The contract of hiring provided for the use of a car by the decedent and the employer in fact acknowledged this need by contributing $6.50 per week to defray the cost of maintenance and operation of same since it was used by the salesman for the employer's benefit. The

testimony is clear and uncontroverted that the decedent, at the time he met his unfortunate death, was driving the car in the performance of his duties as salesman for the respondent. He was on his way from the plant of his employer to visit customers in Passaic county. Had a collision occurred during the operation of this automobile on the public highway, and the employe killed as a result thereof, there would be no question that the death resulted from an accident arising out of and in the course of his employment. *Barkman* v. *Meyer*, 12 *N. J. Mis. R.* 287; 171 *Atl. Rep.* 536; *Berry* v. *Silent Automatic Sales Co.*, 111 *N. J. L.* 322; 168 *Atl. Rep.* 292; *Orange Screen Co.* v. *Drake*, 8 *N. J. Mis. R.* 742; 151 *Atl. Rep.* 486. Such a collision is clearly a risk associated with or incident to the operation of the car and the employment which requires it.

The probability of a collision while operating a car in his master's business is not the only risk incident to the use of the public highways by an employe. It is not only conceivable but probable, in the light of existing traffic conditions, confusion and congestion, that the failure of drivers of vehicles to observe the accepted standards of courtesy in the use of the public highways, in all likelihood would lead to arguments, recriminations and even altercations between the parties involved. Such encounters usually result in the exchange of vociferous and uncomplimentary language between the drivers and are attendant with excitement and agitation. From the testimony adduced it appears that it was such an incident in the case at bar that set in motion a series of events which finally culminated in the high state of emotional excitement on the part of the deceased employe which, according to the undisputed medical testimony, was the precipitating cause of his death.

It is not essential that there be a physical injury. The Workmen's Compensation act imposes no such requirement. The clearly expressed legislative intent is to provide compensation when disability results from "personal injuries" suffered by accident arising out of and in the course of the services required by the contract of employment. A mental, emotional or nervous shock has been held to be a direct injury

for which compensation was properly awarded. *Hall* v. *Doremus*, 12 *N. J. Mis. R.* 319; *affirmed*, 114 *N. J. L.* 47. So here, the extreme emotional excitement ensuing from the traffic incident which precipitated an acute anoxemia and resulted in the instantaneous death of the employe, is a "personal injury" by accident, as contemplated by the statute.

From the testimony of the various witnesses to the traffic incident which occurred about nine-forty-five A. M. on January 14th, 1938, it appears that the deceased employe was driving his Chevrolet coupe in connection with the business of his employer, in a northerly direction on Clinton avenue, at or near the intersection of High street, Newark, New Jersey. The deceased attempted to make a left turn to proceed west into High street and in so doing almost came in contact with a car driven by one Frank Rokasny, in which there was also seated a passenger. Apparently, as a result of Geltman's failure to signal or indicate his intention to make such a turn, Rokasny was evidently angered and he swung his car in such a manner within the intersection so as to prevent Geltman's car from proceeding further and thereupon, both Rokasny and his passenger left their car, proceeded over to the decedent's automobile and began to berate and argue with him. In the overheated colloquy which ensued, angry and abusive language between the three was used. Apparently, by reason of the insistent horns of other vehicles which were prevented from passing because of the obstruction caused by the two automobiles involved, Geltman's car then proceeded out of the intersection and west on High street apparently on his way. The Rokasny car gave chase and forced the deceased to the easterly curb of High street where its driver and passenger again proceeded to Geltman's vehicle and the acrimonious and abusive argument continued in a heated manner while Geltman continued to sit behind the wheel of his car. The language used was indecent and loud and it appeared that the passenger even offered to enter into a fist fight with Geltman. This passenger was seen to open the door of the decedent's car and continue his abuse. while at the same time the driver, Rokasny, was standing at the left window of the same car and both appeared to be

abusing or otherwise arguing with Geltman. Shortly thereafter Rokasny was seen to reach into the interior of Geltman's car in what appeared to be an attempt to strike the occupant. Whether or not he did strike the deceased is uncertain nor is it essential to this determination. Almost simultaneously Geltman's head was seen to fall back, his hat fell off his head and he slumped in his seat with the muscles of his face contracting as if gasping for breath, and as shown by the autopsy findings, died instantly.

While the testimony adduced by the respondent from Rokasny and his passenger differs in some aspects from the testimony adduced by the petitioner's witnesses, including among whom was Frank P. Zimmer, a counsellor-at-law of this state, I have no hesitancy in accepting the version of the entire accident, as related by the petitioner's witnesses, as being more truthful and accurate. I have reached this conclusion after not only hearing but also having an opportunity to observe the demeanor of the various witnesses both on the stand and in the court room.

Dr. Berardinelli of the Essex county medical examiner's office and Dr. Asher Yaguda, both recognized pathologists of this state, appeared and testified in respect to the autopsy findings and the cause of the decedent's death. The autopsy findings disclosed a condition of arteriosclerosis and coronary atheroma both of which were degenerative conditions of long duration and pre-existed the date of the traffic incident. It was their opinion that the attendant emotional agitation, excitement and strain that was generated by the traffic incident described, produced a demand for increased coronary blood supply; and further, that the inability of this increased coronary blood supply to get past the narrowed and encroached orifices of the heart due to the underlying pre-existing arteriosclerotic condition of the petitioner's coronary vessels, resulted in an acute anoxemia causing the death of the decedent.

The proofs in this case clearly indicate, and I so find, that but for the state of emotional strain, agitation and excitement, and the increased demand for coronary blood attendant therewith, the employe's death would not have taken place at the time, manner and place that it did occur. The uncontro-

verted medical testimony adduced by the petitioner adequately supports this conclusion. I find that the incident was the precipitating cause of the decedent's death and produced the acute anoxemia causing a change in the anatomical structure of the decedent's heart and extinguishing his life.

The ultimate disability flowing from a compensable accident superimposed on an already weakened heart has, under our cases, been held to be the measure of the employer's liability. *Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500; *Hentz* v. *Jenssen Dairy Co.,* 122 *Id.* 494. The controlling rule as laid down in *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *Id.* 512, that death from disease alone during the employment will not suffice, but personal injury or death which, on proofs, are sufficient and persuasive, would not have occurred but for the services rendered in the employment amount to an injury by accident, is applicable to the case at bar.

I find that the petitioner herein has met and sustained the burden of proof that the decedent met with an accident arising out of and in the course of his employment, resulting in his death. The petitioner was the wife of the deceased and was living with him at the time of his death and for a number of years prior thereto. The testimony further shows that they had kept a common household and that she was being supported by him. She is a total dependent. The two children of the marriage, Donald and Arlene Geltman, were sixteen and ten years of age respectively. Arlene, who was born on November 25th, 1927, is a total dependent within the meaning of the Workmen's Compensation act. I therefore find and determine that the petitioner Eleanor S. Geltman and Arlene Geltman, her daughter, were and are total dependents and are accordingly entitled to benefits thereunder as such.

\*   \*   \*   \*   \*   \*   \*

HARRY S. MEDINETS,
*Deputy Commissioner.*